UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA S. MARSH,

       Plaintiff,

v.                                    CASE NO. 8:05-CV-1445-T-MAP

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

_____/

**ORDER**

Pursuant to 42 U.S.C. § 405(g), the Plaintiff seeks judicial review of the Commissioner's decision denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  She argues two grounds: failure to adequately evaluate her impairments in combination and a sentence six remand under § 405(g) based on new evidence submitted to the Appeals Council.  After reviewing the administrative record, I find the ALJ did not adequately consider her impairments in combination and that substantial evidence does not support his decision denying benefits.  Accordingly, the Commissioner's decision is reversed and the matter is remanded for an award of benefits beginning October 28, 2002.[1]

*A. Background*

Plaintiff, who was just thirty years old at the time of the last administrative decision (May 2004), has a high school equivalent education and work experience as an electronics assembler, cashier, telemarketer, collections clerk, housekeeper, inspector, and clerk.  Despite her young

---

[1] The parties have consented to proceed before me pursuant to 28 U.S.C. § 636(c) (doc. 14).

Case 8:05-cv-01445-MAP   Document 29   Filed 01/26/07   Page 2 of 10   PageID 185


age, she suffers from a host of severe impairments: chronic headaches, diabetes mellitus (with

neuropathy), hypercholesterolemia, hypertension, cardiovascular disease (post angioplasty and

stent replacement), herniated discs at T8-T9, degenerative disc disease, degenerative joint

disease, gastritis, fibromyalgia, obesity, and depression.[2]  In the seventeen months prior to her

April 2004 administrative hearing, she spent 45 days in a hospital: October 28, 2002 (3 days);

December 10, 2002 (7 days); March 25, 2003 (5 days); June 23, 2003 (3 days); August 19, 2003

(10 days); October 9, 2003 (14 days); and January 24, 2004 (3 days).  Most of these seven

hospitalizations were for recurring abdominal pain, pancreatitis, uncontrolled diabetes, and

hyperlipoproteinemia.[3]  But surgeons also removed her gallbladder and inserted stents to relieve

cardiac complications.  Yet, the ALJ concluded at step five of the sequential analysis, the

Plaintiff could perform jobs classified as less than a full range of light work given her severe

impairments.

     Plaintiff's condition did not improve after her administrative hearing.  Instead, she

continued to suffer the same complications and her condition eventually worsened.  For example,

---

[2]  Plaintiff, who filed her claim in April 1999, alleges she became disabled on September 1, 1998, due to a herniated disc, diabetes, asthma, muscle cramps, severe headaches, and neuropathy.  But during her lengthy administrative review, her impairments increased and worsened.  Initially, the ALJ denied her claim; however, the Appeals Council vacated that decision and remanded the matter for further consideration of various issues.  This appeal concerns the ALJ's second administrative review.

[3]  Hyperlipoproteinemia is abnormally high levels of lipids (cholesterol, triglycerides, or both) carried by lipoproteins in the blood.  Very high triglycerides can cause the liver or spleen to enlarge and may increase the risk of developing pancreatitis.  Pancreatitis can cause severe abdominal pain and is occasionally fatal.  *See Merck Manual Home Edition.*  Although this term does not appear in the medical record, I use it because it incorporates the lipid profile (e.g., the ALJ noted in his decision, Plaintiff's lipid profile in October 2002 was "very disturbing" per her treating physicians (cholesterol at 636 and her triglyceride level "extremely elevated.")).

the day before the ALJ issued his decision, the Plaintiff was admitted to Lakeland Regional hospital for three days due to "acute severe back pain and triglyceridemia" with signs of pancreatitis secondary to her "extremely high triglycerides level." *See* R. 824-824.  Testing performed during her admission revealed diminished pin prick sensation from her toes to proximal legs bilaterally, a sign consistent with sensory polyneuropathy.  Her pain diminished and she was released.  Five months later (November 2004), she was again admitted for six days due to acute abdominal pain and severe hyperlipidemia (R. 864-866).  Later that same month, she consulted with an ophthalmologist complaining of sudden loss of vision.  Physicians diagnosed her diabetic neuropathy.  Subsequent surgery (December 2004) revealed irreversible damage – vitreous hemorrhage with tractional retinal detachment.  Her treating physician concluded she was legally blind.  Plaintiff submitted this evidence to the Appeals Council, but it denied review.  Consequently, the ALJ's decision (R. 21-35) is the Commissioner's final one subject to judicial review.

B.  *Standard of Review*

To be entitled to disability insurance benefits a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process,

promulgated the detailed regulations that are currently in effect.  These regulations establish

a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §

404.1520.  If an individual is found disabled at any point in the sequential review, further

inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must

determine, in sequence, the following:  whether the claimant is currently engaged in

substantial gainful activity; whether the claimant has a severe impairment, i.e., one that

significantly limits the ability to perform work-related functions; whether the severe

impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and

whether the claimant can perform his or her past relevant work.  If the claimant cannot

perform the tasks required of her prior work, step five of the evaluation requires the ALJ to

decide if the claimant can do other work in the national economy in view of her age,

education, and work experience.  A claimant is entitled to benefits only if unable to perform

other work.  *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. §§ 404.1520(f).

Substantial evidence must support an ALJ's findings.  *Richardson v. Perales*, 402 U.S.

389 (1971).  Factual findings are conclusive if "substantial evidence" consisting of "relevant

evidence as a reasonable person would accept as adequate to support a conclusion" exists.

*See* 42 U.S.C. § 405(g); *Keeton v. Department of Health and Human Services,* 21 F.3d 1064

(11th Cir. 1994).  A court may not reweigh the evidence nor substitute its own judgment for

that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Further, the Commissioner's

failure to apply the correct law, or to give the reviewing court sufficient reasoning for

determining that she has conducted the proper legal analysis, mandates reversal.  *Keeton* at

4

1066; *Jamison v. Bowen,* 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

    *C. Discussion*

        *1. failure to adequately assess combined impairments*

    The regulations demand the ALJ consider throughout the disability process not just the disabling effect of a claimant's impairment but the combined effect of all her impairments. *See* 20 C.F.R. §§ 404.1523, 416.923. In short, the ALJ must evaluate the "whole person." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir. 1993). And in carrying out this review, the ALJ must make "specific and well-articulated" findings as to the combined effect of those impairments when determining whether an individual is disabled. *Id.*; *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir. 1987). Admittedly, the ALJ says he considered Plaintiff's severe impairments individually and in combination in accordance with these dictates, but he fails to support this with any particular findings other than boilerplate language. For some cases that language might satisfy the Eleventh Circuit's admonitions about "specific and well-articulated" findings because the record presents substantial evidence supporting a denial. This record, however, does not support such a conclusion.

    Plaintiff's long-suffering bouts with diabetes, hyperlipoproteinemia, and obesity are well documented, and the objective evidence supports her struggles with these diseases. Likewise, the record painfully evidences the complications these impairments can inflict. Often her diabetes and lipid levels were out of control and dangerously elevated. Her extremely high triglycerides caused pancreatitis, which in turn caused severe abdominal pain. Yet, the ALJ implies the reason for her predicament – her failure to follow "medical advice offered by her doctor to lose weight, take her medications, and follow a strict diet." *See* R.

31.

The regulations anticipate noncompliant behavior by a claimant: refusal to follow prescribed medical treatment without a good reason can preclude a finding of disability. *See* 20 C.F.R. § 416.930(b). But to deny benefits on this ground, the ALJ must take an additional analytical step. He must also find that had the Plaintiff followed the prescribed treatment, her ability to work would have been restored. *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988). And the ALJ must take into account the regulatory reasons for noncompliance with treatment recommendations (§ 416.930(c)). To this scheme, the Eleventh Circuit adds one more excuse – poverty. *Id.* at 1213. Unaffordable treatment is nonexistent treatment. *Id.*

To what extent the ALJ relied on Plaintiff's noncompliance in his decision is unclear. Regardless, the record amply supports the conclusion her poverty significantly hampered her ability to obtain medication or treatment thereby exacerbating her severe impairments. For example, the Plaintiff's representative noted at the administrative hearing Plaintiff had "roughly 55 emergency room visits between 1998 and 2004." *See* doc. 67. Most were for back, leg, and abdominal pain. Besides showing a consistent struggle with pain that is supported by an objective component, this statistic also implies her use of the emergency room as a primary care facility, a common practice by the indigent. She reported several times she had limited access to mental treatment (depression at R. 45, 50, 646) or medication (R. 645, 865). Her discharge summary for November 2004 (R. 865) notes she "was seen in consultation by Social Services because she does not have a regular home and she moves from one place to the next and the other is she cannot afford to pay for her medications." In

sum, the ALJ did not consider Plaintiff's poverty when evaluating her noncompliance with any prescribed treatment. This was error, and it clearly compromised the ALJ's analysis of her impairments in combination.[4]

### 2. predictable new evidence

In *Falge v. Apfel,* 150 F.3d 1320 (11th Cir. 1998), the circuit reiterated that when the Appeals Council (AC) denies review, as it did here, the ALJ's decision is the Commissioner's final one subject to review under 42 U.S.C. § 405(g). When new evidence is presented to the AC that was not presented to the ALJ, that new evidence is still part of the record on appeal. *Id*; *Keeton v. Department of Health and Human Servs.,* 21 F.3d 1064, 1066-67 (11th Cir. 1994). Nonetheless, a reviewing court should not consider this new evidence when determining if the ALJ's decision is supported by substantial evidence because the ALJ cannot be faulted for evidence not presented to him. Thus, review is confined to that evidence actually submitted to the ALJ. *Falge,* 150 F.3d at 1323. But evidence submitted to the AC can still be the subject of review under 42 U.S.C. § 405(g). Namely, that provision permits courts to remand cases to the Social Security Administration for consideration of newly discovered evidence. In this instance, Plaintiff would have to show that (1) new, noncumulative evidence exists, (2) the

---

[4] Although not raised by the Plaintiff specifically, the ALJ implies that if Plaintiff lost weight her condition would improve. By not losing weight, according to this logic, she failed to comply with prescribed treatment. This was error as well. SSR 02-01p promulgates an administrative interpretation for evaluating obesity. It emphasizes its complicating nature, its impact on one's physical and mental health, and its potential for exacerbating existing severe impairments. It also recognizes "[o]besity is a disease that requires treatment, although in most people the effect of treatment is limited. However, if untreated, it tends to progress." Consequently, the ruling dictates the Commissioner "will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits." Moreover, the ruling emphasizes "[a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment."

evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for failure to submit the information at the appropriate administrative level.  *Id.*

Using *Falge's* contemplation of "new," the evidence the Plaintiff presented to the AC is not really "new."  Frankly, the better description for it is "cumulative" because it matches the overwhelming evidence from October 28, 2002, a date that coincides with the first of Plaintiff's many hospitalizations for uncontrolled diabetes, severe hyperlipidemia, and their complications.  From then, her condition deteriorated.  The new evidence submitted to the AC predictably confirms this, only more pointedly given Plaintiff's eventual loss of sight.  In other words, the evidence submitted to the ALJ established without any doubt that Plaintiff was disabled beginning October 28, 2002.

At step five, the ALJ had the burden of proving the Plaintiff possesses the residual functional capacity (RFC) to do other work in the national economy.  The regulations define residual functional capacity (RFC) as an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, namely: 8 hours a day, for 5 days a week, or an equivalent work schedule for a statutory twelve-month period. *See* 42 U.S.C. §§ 423(d)(1)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1545(b), 416.945(b); *see also* SSR 96-8p.  This means a claimant must possess the ability to work on a regular, sustained, and continuing basis without interruptions.  It does not encompass repeated interruptions for hospitalizations with some periods of an ability to work scattered in between.  The ALJ misses this essential point.  He fails to take into account the Plaintiffs' repeated hospitalizations for serious, recurring conditions.  With her past as a likely prelude,

8

her uncontrolled diabetes and hyperlipidemia easily predicted more hospitalizations.  These interruptions compromised her ability to sustain "substantial gainful activity" as defined by the regulations.  *See Kangas v. Bowen,* 823 F.775 (3d Cir. 1987) (ALJ erred by failing to consider plaintiff's six hospitalizations in a sixteen-month period for problems with lungs and likelihood that plaintiff would require frequent hospitalizations).

*D.  Conclusion*

A remand for further administrative proceedings is inappropriate.  This is not the classic *Falge* scenario where new evidence demands a remand for administrative consideration of that information.  Here, the ALJ had available all the pertinent evidence.  Because the Commissioner's final decision is not supported by substantial evidence, it is appropriate to remand this matter to the Commissioner with directions to award the Plaintiff benefits as of October 28, 2002, a date that marks the beginning of an interrupted series of hospitalizations due to her combination of severe impairments.  *See Bowen v. Heckler,* 748 F.2d 629, 636-37 (11th Cir. 1984) (although claimant submitted new evidence to Appeals Council a remand for benefits was appropriate because ALJ's decision denying benefits based on evidence before him was not supported by substantial evidence).  Accordingly, it is

ORDERED:

1.  The Clerk is directed to enter judgment for the Plaintiff with directions remanding this matter to the Commissioner for an award of benefits beginning October 28, 2002.

2.  The Plaintiff's motion for a sentence six remand (doc. 23) is DENIED as moot.

IT IS SO ORDERED at Tampa, Florida on January 26, 2007.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE